# UNITED STATES DISTRICT COURT
District of Kansas
(Kansas City Docket)

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO. 2:23-cr-20049-HLT

RITA HARTMAN,

Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Doc. 76)

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and respectfully submit the following in response to the defendant's motion for compassionate release (Doc. 76).

I. PROCEDURAL HISTORY

On February 4, 2025, the defendant enterd a guilty plea to Count 15 of the Indictment (Doc. 1) charging a violation of 18 U.S.C. § 1006, namely, making false entries in federal credit institution records. (Doc. 38.)

On October 30, 2025, the defendant was committed to the custody of the United

States Bureau of Prisons (BOP) for a term of 63 months. (Doc. 55.) The defendant is currently set to be released from custody on February 20, 2030.

On Septemer 28, 2026, the defendant filed the instant motion seeking compassionate release. (Doc. 76.)

## II. DEFENDANT'S ARGUMENT

The defendant's sole basis for compassionate release is that she is the only available caregiver for her husband who has various medical issues that, according to her, require daily care. (*Id.* at 1-2.) The defendant further requests that this Court appoint counsel to better assist her with the arguments. (*Id.* at 2.)

## III. ARGUMENT

### A. Exhaustion

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; yet this rule is subject to a limited number of narrow exceptions. *Freeman v. United States*, 564 U.S. 522, 526 (2011). Section 3582(c)(1)(A) qualifies as one of those exceptions and provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The government concedes that the defendant has properly exhausted her

administrative remedies. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021) (holding that Section 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule, and that the defendant must demonstrate proof of exhaustion).

B. Appointment of Counsel

It is well-settled that a *pro se* defendant has no constitutional right to counsel beyond the direct appeal of her criminal conviction. *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). To that end, the right to counsel clearly does not extend to motions seeking compassionate release. *Hemmelgarn*, 15 F.4th at 1032 (". . . there is no constitutional right to counsel to aid in a defendant's request for compassionate release.").

In determining whether to appoint counsel, a district court generally weighs several factors, to include: (1) the merits of the defendant's claims, (2) the nature of the factual issues raised, (3) the defendant's ability to argue her claims independent of counsel's assistance, and (4) the complexity of the arguments raised. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

Here the defendant has sufficiently pled her claims, and the primary issue before the Court is simply not that complex. In short, the defendant bears the burden of convincing this Court to appoint counsel, *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985), and she has fallen short of that obligation; consequently, her request for counsel must be denied.

C. Merits Response

A district court may grant a motion for compassionate release, however, only if the

following three requirements are met: (1) there are extraordinary and compelling reasons that support the requested sentence reduction; (2) the reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission; and (3) the district court considers the factors set forth in Section 3553(a). 18 U.S.C. § 3582(c)(1)(A). A district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and need not address the other factors. *United States v. Hald, et. al,* 8 F.4th 932, 942 (10th Cir. 2021) (reaffirming that the three steps could be considered in any order). Conversely, when a district court determines that compassionate release *is* warranted, "it must of course address all three steps." *United States v. McGee,* 992 F.3d 1035, 1043 (10th Cir. 2021) (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

Importantly, Section 3582(c)(1)(A) itself requires that the reasons for release be "extraordinary and compelling;" in other words, "reasons that are especially unusual and convincing." *Rutherford v. United States*, 146 S.Ct. 1320, 1330 (2026); *Fernandez v. United States*, 146 S.Ct. 1292, 1302 (2026) (noting that "[w]hile Congress has not defined the 'extraordinary and compelling reasons' that may warrant a reduced sentence, these criteria are not empty vessels"); *cf. Hald*, 8 F.4th at 938 n.4 ("The design of Congress in amending [Section] 3582(c)(1)(A) was not to create an open season for resentencing, after all, the title of the amendment speaks in terms of 'Compassionate' release . . .").[1] As the

[1] As the majority further noted in *Rutherford*, "[w]hile the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass any consideration." 146 S.Ct. at

Court in *Rutherford* further opined, the "heartland" of compassionate release has long been defined as a prisoner's "personal circumstances," often applied in cases where the prisoner is terminally ill. 146 S.Ct. at 1331.

Section 3582(c)(1)(A)(i) also provides that this Court "*may reduce*" the defendant's sentence. The "use of 'may' is quintessential discretionary language." *United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court *must* do so. Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" [Section] 3553(a) factors do not justify it.") (internal citations omitted).

Again, Section 3582(c)(1)(A)(i) reads in relevant part that "[a] court may not modify a term of imprisonment once it has been imposed except that—in any case—the court . . . may reduce a term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress has thus plainly established that a district court considering a motion for compassionate release find

1332.

that any approved reduction be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

To that end, under Section 1B1.13, this Court is directed to consider if the medical circumstances of the defendant, the age of the defendant, his family circumstances, whether the defendant is or has been a victim of abuse, or is serving an unusually long sentence, constitute extraordinary circumstances warranting a sentence reduction. *See* Sections 1B1.13(b)(1)-(4), (6). Section 1B1.13 also permits this Court to consider whether "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Finally, the policy statement reaffirms this Court's obligation to analyze the factors under 18 U.S.C. § 3553(a), namely, "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a); U.S.S.G. § 1B1.13(a).

D. Sole Caregiver

Again, the defendant's sole basis for compassionate release is that she is the only available caregiver for her husband who has various medical issues that, according to her, require daily care. (Doc. 76 at 1-2.) The defendant, however, provides nothing in support

of her claim, *i.e.,* medical records or other documents relative to her husband's condition. Thus, this Court is left *only* with the defendant's word as to how dire her husband's situation is and why she is the only person who can care for him. That is insufficient to grant compassionate release in this instance. *See, e.g., United States v. Mojocoa*, No. 26-10158, 2026 WL 2922985, at *3 (11th Cir. Sept. 29, 2026) (holding that summary disposition was warranted because the defendant failed to submit any evidence supporting his claim, thus the information was insufficient to establish that the defendant's wife was incapacitated within the meaning of Section 1B1.13(b)(3)); *United States v. Arroyo-Marrero*, No. 21-cr-43-CFC, 2025 WL 1615716, at * (D. Del. June 6, 2025) (holding that satisfying a claim under Section 1B1.13 requires provding "adequate information and documentation . . . including, but not limited to, a statement and verifiable medical documentation regarding the individual's incapacitation").

Generally speaking, Section 1B1.13(b)(3)(B) of the Guidelines provides that extraordinary and compelling reasons exist where the spouse of a defendant is incapacitated and the defendant would be the only caregiver. As the presentence investigation report (PSR) notes, the defendant has been married to her husband since June 29, 1973, and they have one daughter who is a nurse practitioner. (Doc. 48 at 15-16, ¶¶ 59-60.) According to the PSR, the defendant's husband suffers from brain-related issues that have required several surgeries. (*Id.* at 15, ¶ 59.) The defendant's motion suggests the same. (Doc. 76.)

The term "incapacitated", however, is not defined by the Guidelines, forcing courts

to look to outside sources to better define the term. *See United States v. McCoy*, No. 25-6039, 2025 WL 2353013, at *3 (10th Cir. Aug. 14, 2025) (noting that courts reference BOP program statements which define "incapacitation" as "completely disabled, meaning that the [individual] cannot carry on any self-care and is totally confined to a bed or chair[.]"). (internal citations omitted); *United States v. Striganivicz*, No. 95-cr-271-1-JMY, 2025 WL 52006, at *3 (E.D. Penn. Jan. 8, 2025) (same); *see, also., United States v. Taveras*, 73 F.Supp.3d 94, 100 (D. Mass. 2024) (applying "incapacitation" in the guardianship context where one must be "unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with the appropriate technological assistance");*United States v. Smith*, No. 5:16-100-KKC, 2024 WL 4102041, at * (E.D. Ky. Aug. 27, 2024) (holding that "incapacitation" within the meaning of Section 1B1.13(b)(3) typically means that the individual is "completely disabled" and "cannot carry on any self-care" or is "totally confined to a bed or chair"); *United States v. Castle*, No. 2:15-cr-00190-KJM-DB-2, 2024 WL 3429668, at *2 (E.D. Cal. July 16, 2024) (finding persuasive BOP's program statement No. 5050.50 as persuasive guidance on how to qualify "incapacitation" of a family member); *United States v. Fernandez*, No. 10 Cr. 863 (AKH), 2026 WL 2859689, at * (S.D.N.Y. Sept. 23, 2026) (apart from looking to BOP's program statements for guidance on the meaning of "incapacitation", also employing Black's Law Dictionary which defines "incapacitate" as "someone too week or too ill to work or function normally") (cleaned up).

Again, all we know about the defendant's husband's level of "incapacitation" is what she describes in her motion. (Doc. 76 at 1-2.) There is nothing added by a medical professional to support the claim. What she describes is concerning, but it is incomplete and fails to suggest that her husband is "incapacitated" as contemplated by prevailing case law. In other words, it does not appear from the bare record before the Court that the defendant's husband is so incapacitated that he cannot carry on any self-care and is totally confined to a bed or chair.

The government is not unsympathetic to the situation, but in terms of compassionate release, the defendant has fallen short of demonstrating that her husband is incapacitated to the degree that her immediate release is necessary.

Likewise, the defendant cannot establish that she is the *only* available caregiver. As she admits, their daughter, who lives within a reasonable distance of her father, can provide care, just that it is difficult because of her own family circumstances. (Doc. 76 at 1.) This, however, is insufficient to demonstrate that the defendant is the only available caregiver. The defendant's daughter is unquestionably qualified to provide care for her father, and she faces no significant burdens beyond the ordinary constraints of daily life. *See United States v. Robelo-Galo*, 166 F.4th 1311, 1317-18 (11th Cir. 2026). And, it generally goes without saying that hardship on a family almost always results from serious criminal conduct and does not, standing alone, constitute extraordinary and compelling reasons. *United States v. Webb*, No. 12-CR-111-7 (CS), 2023 WL 9022874, at *2 (S.D.N.Y. Dec. 29, 2023).

The defendant is simply not the only available caregiver in this instance, and on this ground alone, her motion must be denied.

E. Section 3553(a)

Finally, to the extent the defendant can establish an extraordinary and compelling reason for release, satisfying that burden does not resolve the defendant's entitlement to a reduction in sentence or release from confinement. This Court must still consider whether she poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release. Accordingly, this Court must consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of her offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6).

At the outset, the government notes that the defendant has served less than one year of her 63-month sentence. Her immediate release would constitute an almost 80% reduction in her overall sentence. A significant windfall, indeed.

As this Court is aware, starting in at least 2007, and almost certainly earlier, the defendant used her role as the Manager for Muddy River Credit Union (MRCU) to steal at least $844,161.78 to enrich herself and her family. She embezzled money from MRCU in three primary ways: (1) she stole physical cash from at least 2010 to 2021 totaling

$346,473.13; (2) she fraudulently credited her own and family members' MRCU share accounts without actually depositing any funds, totaling $381,434.23 from 2007 to 2017; and (3) she fraudulently reduced family members' loan obligations when the family member did not actually make a payment, totaling $116,254.42 from 2007 to 2018. (PSR at 6-7, ¶¶ 15-20.)

The defendant also used her role as the Manager, and an array of false entries in MRCU's records, to hide her tracks. (*Id.* at 7, ¶¶ 21-24.) Over the years, the defendant kept MRCU's general ledger manually, in hard copy, which made it easier for her to conceal her theft. (*Id.* at 9, ¶ 29.) The scheme continued until 2021, when a regulator-mandated audit immediately found discrepancies in MRCU's financial records—in particular, the significant amount of cash that was listed on MRCU's general ledger. The audit was ordered in 2019. The defendant delayed it until January 2021, at which point the regulators insisted that it be completed. (*Id.* at 9, ¶¶ 29-30.) The defendant left MRCU and abruptly resigned just as the audit began. (*Id.* at 5, ¶ 10.) The audit later uncovered the foregoing methods of embezzlement and concealment.

The damage the defendant caused is significant, wiping out MRCU's capital and rendering it insolvent, ultimately forcing a merger into Frontier Federal Credit Union to continue operations. Granting the defendant compassionate release runs counter to the relevant factors under Section 3553(a), namely, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

In sum, allowing the defendant to be released after having served approximately 9 months of a 63-month sentence would run afoul of every one of those factors.[2]

## IV. CONCLUSION

The defendant cannot demonstrate extraordinary and compelling reasons for compassionate release and certainly cannot demonstrate that the factors under 18 U.S.C. § 3553(a) balance in her favor. The government therefore respectfully moves this Court to reject the defendant's arguments and deny her motion for compassionate release.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

By: /s/ Jared S. Maag

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney
290 Carlson Federal Bldg.
444 SE Quincy St.
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

[2] According to records provided by the BOP, the defendant began her custodial sentence on December 17, 2025.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2026, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to those attorneys who have entered their appearance in the matter, and that a true and correct copy of the same was delivered via USPS, first class postage prepaid, to:

Rita Hartman
FCI Pekin
PO Box 5000
Pekin, IL 61555-5000

By: /s/ Jared S. Maag

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney